# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN I. DOLAND, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. 1:11-CV-1783 |
| | : | |
| LUIS BERRIOS, COMSTAR ENTERPRISES, INC., BWAABI AMAJUWON and FAF, INC., | : | (Magistrate Judge Carlson) |
| | : | |
| Third-Party Plaintiffs/Defendants | : | |
| | : | |
| v. | : | |
| | : | |
| NEW PENN MOTOR EXPRESS, INC., THEODORE MRKONJA, TIMOTHY FREDERICK, GAILLARD STROYE, GREATER OMAHA EXPRESS, LLC, ADONIUS SHORES, and TAYLOR XPRESS | : | |
| | : | |
| Third-Party Defendants | : | |

## MEMORANDUM OPINION AND ORDER

**I. Statement of Facts and of the Case**

This case arises out of a February 26, 2010, snowbound chain reaction multi-vehicle accident on Interstate 76 in Cumberland County, Pennsylvania. On February 26, 2010, during a snow storm on the Pennsylvania Turnpike, a tractor-trailer

operated by Robert Smith, who was then employed by CRST collided with a tractor trailer operated by Carlos Sheppard. Another tractor-trailer, owned by WFM and operated by Allen Kauffman, then struck the CRST tractor trailer. Observing the accident ahead of him, Galliard Stroye, operating a Greater Omaha Express tractor trailer, came to a halt in the left hand lane of the turnpike. A tractor trailer owned by New Penn Motor Express, Inc., and operated by Timothy Frederick, also came to a stop in the right hand lane of the turnpike, along side the Greater Omaha Express truck. Frederick's New Penn tractor trailer was then struck from behind by a second New Penn tractor trailer operated third party defendant, Theodore Mrkonja. The force of this collision caused the New Penn vehicles to slide to their left and third party defendant Frederick's vehicle struck the Omaha Express tractor trailer which was along side it.

In the meanwhile, several vehicles had come to a sudden stop immediately behind the Omaha and New Penn trucks in the left hand lane of the turnpike. These vehicles included an automobile operated by the plaintiff, Shawn Doland, a second automobile, and a tractor trailer owned by Taylor Xpress Lines, inc., and operated by Adonius Shore. In a matter of minutes, these vehicles became embroiled in yet another series of chain reaction accidents when Luis Berrios, operating a tractor trailer owned by Comstar Enterprises, Inc., struck the Taylor Xpress tractor trailer,

forcing it into the cars stopped in front of that truck. Within seconds, yet another collision occurred when Bwaabi Amajuwon, who was driving a tractor trailer owned by FAF, Inc., collided with the rear of Berrios' truck, forcing it into the vehicles in front of it in a chain reaction fashion.

This Palsgrafian[1] proximate cause scenario led to the instant litigation. As part of this litigation on March 12, 2012, a third party complaint was served by Defendants/Third Party Plaintiff Berrios and Comstar upon Taylor Xpress by certified mail at that company's business address, 1516 S. Wabash Avenue, Apt. 206, Chicago, Illinois. The mail delivery receipt was signed by Rosana Taylor.

Twenty months then passed without Taylor Xpress taking the slightest action to defend this lawsuit in federal court or question the adequacy of this service of process. After this prolonged period of complete inaction on Taylor's part, on November 5, 2013, Berrios and Comstar moved for the entry of a default judgment against Taylor. Default was then entered against this third party defendant on November 6, 2013.

Another year then passed without any action by Taylor to litigate this case, or address it prior defaults in this litigation. Finally, on November 25, 2014, 32 months

---

[1] Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99 (N.Y. 1928).

after service of the third party complaint and more than one year after entry of default, Taylor filed a motion to reopen this case. (Doc. 156.) In its motion to reopen, Taylor alleged for the first time and in a summary fashion that initial service of process was improper because Rosana Taylor was not was an officer of Taylor Xpress authorized to accept service. Taylor then asserted without any further elaboration that it had belatedly determined that it has some currently unidentified defenses to this litigation, and sought to set aside its defaults over the past three years. (Id.)

Berrios and Comstar have responded to this motion to reopen default judgment in a compelling fashion, providing evidence supporting the sufficiency of its service of process upon Taylor Xpress through Rosana Taylor. Specifically, Berrios and Comstar have presented evidence showing that Rosana Taylor was the Vice President of Taylor Xpress; was the co-owner of the property listed at 1516 Wabash Avenue which was designated at the business address of Taylor Xpress; was apparently related to Dachon Taylor, the President of Taylor Xpress by blood or marriage; and had held herself out as the Fleet Manager for Taylor Xpress, a position that entailed wide-ranging supervisory responsibilities at that company. (Doc. 158.)

Presented with this compelling proof, Taylor Xpress has elected not to dispute in any fashion the averments made by Berrios and Comstar. Thus, Taylor Xpress has not filed any reply brief in support of its motion to reopen, and the time for filing a

reply brief has now passed. Therefore, we will consider this motion in light of the unrebutted factual averments made by Berrios and Comstar.

On these uncontested facts, Taylor Xpress' motion to reopen default will be denied.

## II.  Discussion

### A.  Default Motions- Standard of Review

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55 a default judgment may only be entered when the party against whom the default judgment is sought was served and "has failed to plead or otherwise respond." Rule 55(a), F.R.Civ.P. Furthermore, in ruling upon requests relating to default judgments it is well-settled that these decisions are:

> [L]eft primarily to the discretion of the district court. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir.1951). We recognize, however, that this Court does not favor entry of defaults or default judgments. We require doubtful cases to be resolved in favor of the party moving to [deny or] set aside the default judgment "so that cases may be decided on their merits." Id. at 245. See also Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir.1983); Feliciano v. Reliant Tooling Company, Ltd., 691 F.2d 653, 656 (3d Cir.1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir.1982). Nevertheless, we do not [deny or] set aside the entry of default and default judgment unless we determine that the district court abused its discretion. We require the district court to consider the following factors in exercising its discretion . . .: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. Gross v. Stereo

Component Systems, Inc., 700 F.2d at 122; Feliciano v. Reliant Tooling Company, Ltd., 691 F.2d at 656; Farnese v. Bagnasco, 687 F.2d at 764.

United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984).

In this case, in the exercise of our discretion we find that Taylor's belated motion to reopen this default judgment should be denied. In reaching this conclusion, we note at the outset that we reject Taylor's tardy assertion that service of process was improper. In this regard, Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process should be made. Under Rule 4(h), "a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served: (1) in a judicial district of the United States: (A) in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h). Rule 4(e)(1), in turn, provides that a party "may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(e)(1). The Pennsylvania Rules of Civil Procedure then permit service through the mails, but impose certain specific requirements upon that service stating that: "a copy of the process shall be mailed to the defendant by any form of mail requiring a receipt signed by the defendant or his authorized agent." Pa. R. Civ. P. 403.

Recognizing that "the party asserting the validity of service bears the burden of proof on that issue See 4A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1083 (1987)," Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993), here we find that Berrios and Comstar have established proper service on Taylor Xpress. That service was made by certified mail in accordance with state practice upon the co-owner of the business property, someone who has been identified as a corporate vice president, and an individual who has described herself as the Fleet Manager for Taylor Xpress, a position that entailed wide-ranging supervisory responsibilities at that company. (Doc. 158.) In our view, such service of process upon a corporate vice president at the corporate business address–factual averments which are unrebutted by Taylor–is adequate to effect service on the corporation. Trump Taj Mahal Associates v. Hotel Servs., Inc., 183 F.R.D. 173, 175 (D.N.J. 1998).

Finding that service of process was proper here, we note that reopening this default judgment at this late date would be highly prejudicial to the other parties in this litigation, who have completed discovery, conducted protracted motions practice, and have engaged in extended and extensive mediation efforts in this litigation. Thus, the first of the benchmarks we must examine, the prejudice to the remaining parties in the litigation, weighs heavily against reopening this case at this late date.

Similarly, the third factor we must consider– whether the default was the result of the defendant's culpable conduct– also weighs heavily against Taylor.  Almost three years have now elapsed since Taylor was served and more than a year has passed since default was entered against Taylor in this lawsuit.  Even at this late date, Taylor provides no explanation for its failure to address this litigation in a timely and responsible fashion, beyond its belated and factually discredited claims regarding adequacy of service of process, a matter which should have been addressed at a minimum in November of 2013, when Berrios and Comstar moved for default.  In short, this case presents paradigm of culpable inaction on the part of Taylor Xpress, inaction which spans years and constitutes yet another factor which favors denial of this motion to reopen.

The sole remaining factor we must consider, then, is whether the defendant has a meritorious defense.  While Taylor contends that it has such a defense, it has not shared that defense with the Court.  Therefore, we are at a loss to determine what weight, if any, this factor actually deserves. We note, however, that joinder of Taylor Xpress as a third-party defendant seems appropriate here, since pursuant to Rule 14(a) of the Federal Rules of Civil Procedure, a defending party may join a nonparty "who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(a). The district court has the discretion to permit joinder.  See Morris v. Lenihan, 192

F.R.D. 484, 487 n.3 (E.D. Pa. 2000). A third-party plaintiff may use Rule 14(a) to implead a third-party defendant only if the proposed third-party defendant may be liable to the third-party plaintiff derivatively or secondarily. See Naramanian v. Geyhound Lines, Inc., Civ. A. No. 07-CV-4757, 2010 U.S. Dist. LEXIS 121145, 2010 WL 4628096, at *2 (E.D. Pa. Nov. 15, 2010) (citing FDIC v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994)). Thus, joinder is not available when a defendant seeks to join a third party who may only be liable to the plaintiff. Id. In order to prevail on a motion to join a third-party defendant, a third-party plaintiff must demonstrate some substantive basis for its claim against the proposed third-party defendant. Pitcavage v. Mastercraft Boat Co., 632 F. Supp. 842, 845 (M.D. Pa. 1985) (citing Robbins v. Yamaha Motor Corp., U.S.A., 98 F.R.D. 36 (M.D. Pa. 1983)).

If a court finds that these requirements have been satisfied, "motions for joinder should be freely granted to effectuate the purposes of the impleader rules." Hartford Cas. Ins. Co. v. ACC Meat Co., LLC, Civ. A. No. 1:10-CV-1875, 2011 U.S. Dist. LEXIS 9945, 2011 WL 398087, at *2 (M.D. Pa. Feb. 2, 2011). As this Court has previously explained:

> Joinder under Rule 14(a) is meant to avoid circularity of action and eliminate duplication of suits. See Judd, 65 F.R.D. at 615; see also Monarch Life Ins. Co. v. Donahue, 702 F.Supp. 1195, 1197 (E.D.Pa.1989) (stating that the aim of Rule 14 is to "accomplish in one proceeding the adjudication of the rights of all persons concerned in the

controversy and to prevent the necessity of trying several related claims in different lawsuits") (internal citations and quotations omitted); 6 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure 3d § 1443 (2004). In accordance with this broad purpose, Rule 14(a) has been liberally interpreted to allow the joinder of third-party claims despite allegations of different causes of action or different theories of liability from the original complaint. See Judd, 65 F.R.D. at 614; Monarch Life, 702 F.Supp. at 1198. The factors the Court should consider include the timeliness of the motion, and whether joinder would introduce an unrelated controversy, unduly complicate the case, or prejudice the plaintiff. See Judd [v. General Motors Corp., 65 F.R.D. 612, 615 (M.D. Pa. 1974)].

Id.

Applying these legal benchmarks, federal courts have endorsed the use of Rule 14 joinder to consolidate claims arising out of chain reaction automobile accidents, reasoning that such joinder is particularly appropriate in jurisdictions which have adopted comparative negligence statutes since joinder of all parties allows for a full assessment of all potential, comparative negligence arising out of a single episode. See Tietz v. Blackner, 257 F.R.D. 510 (D. Utah 1994)(Construing Utah's comparative negligence statute). Pennsylvania is a comparative negligence jurisdiction, see 42 Pa.C.S. §7102, and case law in Pennsylvania clearly contemplates the joinder of multiple parties in a single lawsuit arising out of a multi-vehicle accident. See generally, Ross v. Tomlin, 696 A.2d 230 (Pa. Super. Ct. 1997)(acknowledging joinder of multiple defendants in a chain reaction automobile accident). Furthermore,

Pennsylvania courts have long recognized that liability may be apportioned among party-defendants in chain reaction accident cases, where multiple, successive collisions compound the injuries suffered. See generally, Shamey v. State Farm Ins. Co., 331 A.2d 498 (Pa. Super. 1974)(discussing apportionment of liability among defendants in accident case involving successive collisions). In such instances the goals of Pennsylvania's comparative negligence statute, the apportionment of liability among defendants based on their relative degree of causal fault, are promoted through joinder of all potentially culpable parties in a single action. See 42 Pa.C.S. §7102.

Moreover, defendant Berrios has articulated a theory of third party negligence as to Taylor Xpress which draws factual support from the record in this litigation, arguing that the third party defendants were negligent in causing an accident which suddenly stopped traffic, under poor weather conditions, leading to rear-end accidents by other vehicles. Cases construing Pennsylvania tort law have found that the sudden stoppage of a vehicle on a roadway under adverse weather conditions may create factual issues concerning negligence and may constitute a proximate cause of an accident involving rear end collisions behind the stopped vehicle. See Gensemer v. Williams, 419 F.2d 1361, 1362 (3d Cir. 1970). Further, in vehicle accidents it has been said that: "Issues of negligence and contributory negligence are rarely appropriate for summary judgment. As courts . . . have repeatedly noted, '[o]nly in

exceptional cases will questions of negligence [and] contributory negligence ... pass from the realm of fact to one of law.' Paraskevaides v. Four Seasons Wash., 292 F.3d 886, 893 (D.C.Cir.2002) (quoting Shu v. Basinger, 57 A.2d 295, 295–96 (D.C.1948)); see also Lyons v. Barrazotto, 667 A.2d 314, 322 (D.C.1995) ('[i]ssues of contributory negligence, like issues of negligence, present factual questions for the trier of fact [u]nless the evidence is so clear and undisputed that fair-minded men can draw only one conclusion.') (internal citations omitted). This is no less true in tort claims involving car accidents, as '[a]utomobile collisions at street intersections nearly always present questions of fact ... Only in exceptional cases will questions of negligence, contributory negligence, and proximate cause pass from the realm of fact to one of law.' Aqui v. Isaac, 342 A.2d 370, 372 (D.C.1975); see generally Mahnke v. Washington Metro. Area Transit Auth., 821 F.Supp.2d 125, 132–33 (D.D.C.2011) (summarizing case law in this area)." Stehn v. Cody, CIV.A. 11-1036 CKK, 2013 WL 4505438 (D.D.C. Aug. 26, 2013). This fundamental truth is also aptly reflected in Pennsylvania case law, which frequently rejects invitations in motor vehicle accident cases on disputed factual records to make judgments regarding negligence and comparative negligence as a matter of law. See, e.g., Burke v. TransAm Trucking, Inc., 605 F. Supp. 2d 647, 649 (M.D. Pa. 2009); Sonnenberg v. Erie Metro. Transit Auth., 137 Pa. Cmwlth. 533, 534, 586 A.2d 1026, 1027 (1991);

LeGrand v. Lincoln Lines, Inc., 253 Pa. Super. 19, 21, 384 A.2d 955, 956 (1978).

Given these legal guideposts, we find that Taylor Xpress has not shown in a persuasive way that it has a meritorious defense to this action of such a compelling quality that Taylor can overcome the prejudice to the other parties arising from a belated reopening of this litigation, or excuse Taylor's unexplained refusal to participate in this litigation over the past three years.  Therefore, finding that the balancing of these discretionary factors heavily favors denial of Taylor's motion to set aside this default judgment, the motion will be denied.

### III.    Order

Accordingly, for the forgoing reasons, IT IS ORDERED that Taylor Xpress' Morton to Reopen the Default Judgment (Doc. 156.), is DENIED.

So ordered, this 3d day of February, 2015.

                                             *S/Martin C. Carlson*
                                             Martin C. Carlson
                                             United States Magistrate Judge